OPINION OF THE COURT
Edwin Kassoff, J.
This action arises out of a written contract entered into by the parties in 1982 at the termination of their cohabitation. Defendant made a motion for judgment dismissing the plain *73 tiffs complaint pursuant to CPLR 4401 at the close of plaintiff’s case.
Plaintiff, Laura J. Donnell (LJD), was married on September 6, 1975 and entered into a separation agreement on April 17, 1978 with her husband. Plaintiff began cohabiting with defendant, Conrad Y. Stogel (CYS), in the latter part of 1978 while still married. She did not obtain a final divorce decree from her husband until November 18, 1980.
The parties cohabited from 1978 until January 1982. Upon termination of their relationship, the parties on January 9, 1982, entered into a written contract which was drafted by defendant after consultation with an attorney.
The contract expressly stated that the consideration for the agreement was the parties "living together under the same roof as man and wife for four years and during that time [plaintiff] contributing to the general well being of CYS’s business career, providing sound business counsel and working without salary in the development of Markon Footwear.” The contract provided that defendant would pay the plaintiff $35,000 per year for three years payable in monthly installments from January 1982 through December 1984. The contract in subsection 2 provided for additional compensation for the plaintiff in the amount of $35,000 per year for three years starting within the first year of profitability of Markon Footwear. In order for the plaintiff to receive the agreed moneys she had to abide by one restriction, which was that she would not marry within the term of the contract. If Ms. Donnell did marry, she was expressly prohibited from receiving further payments under the contract. Furthermore, the contract provided that "in the event LJD is unemployed in the fourth year, the compensation in item 1 ($35,000 salary) shall be extended for the fourth year.”
The defendant paid the plaintiff $12,000 under the agreement and plaintiff now sues for the alleged balance of the contract which she claims to be $87,500 plus a bonus of an additional $35,000 a year for the three profitable years for a total of $192,500 plus interest less the $12,000 defendant already paid. Plaintiff acknowledges that she is only entitled to the money until June 1984, the date of her marriage.
In support of the motion, defendant contends that the contract is void by reason of lack of consideration running from the plaintiff to the defendant. The defendant states the agreement was primarily an agreement to commit adultery, *74 which is a crime in New York pursuant to New York Penal Law § 255.17.
Plaintiff, in opposing the motion, contends that the contract did not facilitate adultery because although plaintiff was married to another man, her marriage was dead. Furthermore, plaintiff contends there is other sufficient consideration for the contract. This consideration included services rendered for Markon Footwear, including negotiating a contract, finding a corporate office, designing the corporate logo, stationery, business cards, shoe box, advertisements and entertaining clients in addition to various household services.
The issue before the court is whether a written contract for alleged services rendered, entered into by unmarried parties cohabiting together while one party to the contract is married to another, is enforceable. This case appears to one of first impression in New York.
It is well settled that the New York courts will enforce "an express agreement between unmarried persons living together * * * provided only that illicit sexual relationships were not 'part of the consideration of the contract’ ”. (Morone v Morone, 50 NY2d 481, 486 [1980].) Although cohabitation does not prevent the parties from entering into an agreement, it must still be a valid agreement with valid consideration. The contract at issue in this case expressly states that the consideration is "for living together under the same roof as man and wife”. The relationship of man and wife necessarily includes sexual relations. In this case the sexual relations were illicit because during the first part of the parties’ relationship the plaintiff was married. Plaintiff through her own testimony admitted to regularly having sex with defendant and becoming pregnant by him while still married to her husband. The pregnancy was terminated by abortion. This relationship was in violation of Penal Law § 255.17 which makes adultery a crime.
Plaintiff relies on General Obligations Law § 5-1105 to validate the past illicit consideration. Plaintiff contends that since the agreement was not entered into until the end of the relationship the consideration could not be for the purpose of facilitating adultery because plaintiff was no longer married. The plaintiff’s reliance upon this section is misplaced. The purpose of this statute is not to transform illegal consideration into legal consideration, but rather to permit enforcement of a contract based upon past consideration. (See, Calamari and Perillo, Contracts § 5-18, at 268-269 [1987 ed].)
*75 New York public policy disfavors "[agreements tending to dissolve a marriage or to facilitate adultery”. (McCall v Frampton, 81 AD2d 607, 608 [2d Dept 1981].) Therefore, courts "closely [scrutinize]” these agreements to "determine whether the main objective of the agreement is aimed to produce that result”. (McCall v Frampton, supra, at 608.) Although plaintiff contends the relationship did not facilitate adultery because her marriage was dead, she was nevertheless still married. As the court noted in Isabellita S. v John S. (132 Misc 2d 475, 476 [1986]), although parties are separated they are still married. Therefore, the agreement has an illegal component to it which renders it unenforceable.
Plaintiff argues that the contract contained another statement of alleged consideration, the furnishing of "sound business counsel”. This argument requires the court to analyze the concept of severability. The most recent exposition on this point is from the Appellate Division in Artache v Goldin (133 AD2d 596 [2d Dept 1987]). The court stated (at 599) that a "court may sever the illegal aspects and enforce the legal ones, so long as the illegal aspects are incidental to the legal aspects and are not the main objective”. In this case the court finds that the illegal aspects are not incidental but rather "infects and destroys the agreement”. (McCall v Frampton, supra, at 609.) It is clear that the main objective of this agreement was to compensate the plaintiff for cohabiting with the defendant. Plaintiff, by her own testimony, acknowledged that she had no previous business or art experience. The business knowledge she acquired was through the defendant. The court cannot accept plaintiff’s argument that the defendant, a businessman, would pay the plaintiff $35,000 annually with the possibility of an additional yearly compensation of $35,000 for such limited services and knowledge. In addition, a clause in the contract provided that if plaintiff remarried she would not be entitled to any further compensation under the contract. This clause further reinforces the court’s finding that the consideration was for the illicit relationship and not the menial tasks allegedly performed by the plaintiff. Moreover, it is apparent from the evidence that the agreement was made to assist the plaintiff in the transition period, to help her maintain herself while living alone. This is illustrated not only by the clause which denies any compensation upon marriage by the plaintiff, but also by the clause which provides that if the plaintiff was still unemployed in the fourth year (1985) she would receive additional compensation. It is *76 not logical or reasonable for parties intending to provide compensation for past services rendered to have it dependent upon the plaintiff's marital or employment status.
Assuming, arguendo, that the court had found that the illegal aspects of the contract were incidental to the legal aspects and were not the main objective of the agreement, the court would nevertheless still not find the contract to be severable. Plaintiff in her own testimony státed that she was unable to separate and segregate the "business” aspects of the agreement from the "personal” aspects since they were "wrapped up together” and were a "seemles [sic] web” that could not be separately valued.
In conclusion, this court finds that the adulterous relationship was the primary consideration of this contract and therefore the contract is neither enforceable nor severable.